Clifford Ray ELLIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 36991.

Court of Criminal Appeals of Texas.

May 27, 1964.

a rubber hose found it in appellant's car, and he then hit appellant with the hose. At this time the appellant said: "I'll be back; I'm going after a gun." In an hour or two the appellant returned in a car, stopped behind the truck, and as he, with a shotgun in his hand, walked toward the deceased, who was standing near the truck with both hands in the air, saying "Clifford (appellant) don't shoot," the appellant shot the deceased and he fell to the ground. Appellant put his gun in his car and drove away. The witness Rollins said that the appellant "started to get another shell to shoot him again," but when he told him he was going to call the police the appellant left; that he never heard the deceased make any threats; and that the deceased had no weapons in his hands or about his body at the time he was shot.

In response to a radio report about 4:10 p. m., Officer Middleton, while on the way to the scene of the shooting, met the appellant in his car and, after pursuing him with the car's red lights flashing for six or seven blocks, the appellant stopped. A shotgun found in the car was shown to be the gun used in shooting the deceased.

The testimony of a physician shows that the death of the deceased was caused by a gunshot wound in the abdomen.

Testifying in his own behalf, the appellant stated that while talking to the deceased and Rollins near the truck, he learned they were looking for a rubber hose and he told deceased he had one in the back of his own car. The deceased asked to see it. After giving it to appellant, the deceased, while walking alongside appellant's car, saw his (deceased's) hose in the front seat of appellant's car, picked it up and hit him with it. Appellant said to him: "I didn't take your hose. I was going to loan you mine." The deceased replied: "Well, I'll break you from that," and picked up a piece of iron pipe, which he soon dropped, and walked away. In a brief time Rollins told the appellant: "You better get gone; he'd (deceased) gone over there to the

James H. Martin, Dallas, for appellant.

Henry Wade, Dist. Atty., Frank Watts, John Vance and C. M. Turlington, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for murder; the punishment, forty years.

The evidence of the state reveals that about 4 p. m., while the deceased and Robert Rollins were repairing deceased's truck in a vacant space between a beer tavern and the street, the deceased in looking for

house for his pistol." Appellant further testified that he bought six or eight bottles of beer and went home and about "an hour or so" later when he was leaving home his companion said: "You better put that old thing (shotgun) in the car and let him see it, at least he'll know that you are protected, and he (deceased) won't bother you." When they drove into the lot to get more beer at the tavern the deceased started to his truck, and appellant "stopped him just about the time he started to get in the car door, and just about, he said, 'Wait just a minute,' said, 'Let's talk this over,' and I hold him, 'Okay, I don't want you to be shooting me,' because the boy done told me where he went after, and he walked on up to me, and he was, I would say not more than three and a half feet at the most, if that much, and I got the gun pointed at him, and well, just talking, and the next thing I know, he grabbed ahold of that barrel and, well, that is when that doggone thing exploded, hit him in the side." On cross-examination the appellant testified that the deceased did not have any weapon in his hand when he shot him.

The owner of the tavern testified that he never saw the shooting, but was in the tavern when it occurred, and that afterwards he saw in deceased's truck a pistol containing one shell which he delivered to the police.

■ The appellant in his brief contends that "it is reversible error for District Attorney on cross-examination to ask Defendant's witness if he had heard about the Defendant fleeing from an alleged stolen automobile and if said witness had heard about a vagrancy conviction in another state, when no other evidence is offered by state to support District Attorney's insinuation that Defendant was criminal generally."

From the evidence on the main trial it is shown that the contention of the appellant arose as follows:

"Q. Now, you know this man's general reputation for being a peaceful and law-abiding citizen, is that right?

"A. Yes, sir.

"Q. Well, in that connection, let me ask you if you had heard that in Raleigh, North Carolina, in February of 1953 he had been convicted of being a vagrant, a crime of vagrancy?

"A. No, sir, I didn't.

"Q. You hadn't heard anything about that? A. No, sir.

"Q. Had you heard that on the 23rd of August this year, that he was arrested along with two other persons while they were fleeing from a stolen car in the one hundred block of Pryor Street here in Dallas? A. Yes, sir."

Appellant: "Your Honor, I'm going to object to that specifically with reference to 1953 conviction that would make this Defendant a minor of tender years, and any kind of an apprehension when he was that particular age would be completely inadmissible.

"The Court: Well, is it in the testimony about what the age of the defendant is?"

Appellant: "Well, the Defendant testified that he was twenty-five or twenty-six now, and in '53 that would make him about fifteen or sixteen years old.

"The Court: I sustain the objection to any conviction while he was a minor, if that is when it was, but I'm not certain."

State: "Well, that's all right; we'll just ask no more questions.

"The Court: All right, any further questions?"

Appellant: "No, pass the witness."

No objection was made to the question asking about the vagrancy conviction. No

motion was made to exclude the evidence about the appellant fleeing from a stolen car, or to instruct the jury not to consider it, or to declare a mistrial. No exceptions were reserved to any act or failure to act on the part of the court pertaining to the vagrancy conviction or the stolen car. Therefore no error is shown. Bearden v. State, 169 Tex.Cr.R. 437, 334 S.W.2d 447.

The court charged the jury on the law of murder with and without malice, the law of self defense as to real and apparent danger, the law of accident, and also submitted the issue of the suspension of his sentence to the jury.

The evidence is sufficient to support the conviction, and no error appearing, the judgment is affirmed.

Opinion approved by the Court.